DAVID B. WILLARD, trustee, *vs.* BOARD OF APPEALS
OF ORLEANS.

No. 86-1110.

Barnstable.   September 11, 1987. — October 26, 1987.

Present: GRANT, PERRETTA, & SMITH, JJ.

*Zoning,* Lot, Setback, By-law, Nonconforming use or structure, Special
permit, Appeal. *Statute,* Construction.

The portion of the first paragraph of § 6 of G. L. c. 40A commencing with the
second "except" clause, which allows certain changes to a single-family
house as of right if the "nonconforming nature" of the structure is not
increased, governed a case in which the owner of a single family house
sought building and special permits for construction of an addition to
his preexisting nonconforming structure. [17-19]
The particular provision of a town's zoning by-law that specifically referred
to G. L. c. 40A, § 6, and matched almost exactly the language of the
second "except" clause of the first paragraph of § 6, governed a case
in which the owner of a single-family house sought building and special
permits for construction of an addition to his preexisting nonconforming
structure. [19-20]
Language in the concluding portion of the second sentence of the first
paragraph of G. L. c. 40A, § 6, stating that a preexisting nonconforming
structure or use may be extended provided that it "shall not be substan-
tially more detrimental than the existing nonconforming use to the neigh-
borhood," and similar language in a particular provision of a town's
zoning by-law, was treated as including the words "structure or" im-
mediately preceding the word "use." [20-21]
A decision of a town's zoning board of appeals sustaining a building inspec-
tor's denial of an application by the owner of a single-family house for
a building permit to construct an addition to his preexisting nonconform-
ing structure, and denying the owner's application for a special permit
authorizing the desired construction, was annulled as in excess of the
board's authority where it did not appear from the record that the board
had proceeded under the first paragraph of G. L. c. 40A, § 6, and
applicable provisions of the zoning by-law, or that the judge on appeal
to the Superior Court had made the requisite independent findings on
the questions whether the proposed addition would "increase the noncon-
forming nature" of the structure and whether the addition would result
in a structure "not substantially more detrimental" to the neighborhood
than the existing structure. [22-24]

CIVIL ACTION commenced in the Superior Court Department on June 13, 1985.

The case was heard by *James J. Nixon, J.*

*Lawrence O. Spaulding, Jr.,* for the plaintiff.

*Michael D. Ford,* Town Counsel, for the defendant.

GRANT, J. In 1985 the plaintiff, in his individual capacity,[1] acquired title to a lot in Orleans with an area of some 0.8 acres and a frontage of more than 100 feet on the northerly side of Cliff Road, a private way. The lot had been in separate ownership from that of any adjoining lot since 1965. A single-family house had been constructed on the lot at least as early as 1964; one corner of the house abutted the northerly sideline of Cliff Road.[2] There was no minimum setback requirement in the Orleans zoning by-law until 1972, when a twenty-five foot setback was established in the residential zoning district in which the plaintiff's lot is located.

In 1985, following his acquisition, the plaintiff applied to the local building inspector for a permit to construct an addition to his house which would be located partly within the twenty-five foot setback. The building inspector denied the application for some reason or reasons which do not appear. The plaintiff appealed from that decision to the board of appeals and also applied to the board for a special permit authorizing the construction of the desired addition. The board, after hearing, sustained the decision of the building inspector and denied the application for a special permit. The plaintiff appealed to the Superior Court (G. L. c. 40A, § 17), which, in effect, affirmed both aspects of the board's decision. We reverse the judgment of the Superior Court and order the case remanded to the board for further proceedings.

---

[1] The plaintiff describes himself in the complaint as the trustee of a real estate trust known as Preservation Advocacy Trust. It makes no difference for present purposes whether the locus is held by the plaintiff in his individual capacity or in a fiduciary capacity.

[2] A small portion of that corner of the house and the associated portion of a retaining wall actually intrude into the layout of Cliff Road. Nothing in this opinion turns on either intrusion.

1. *The relevant statutory provision.* The first question for decision is whether this case is governed by the first[3] or by the fourth[4] paragraph of G. L. c. 40A, § 6, as amended through St. 1979, c. 106. Town counsel argues for the former; the

[3] The first paragraph of the present G. L. c. 40A, § 6, reads in relevant part as follows: "Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, or to a building or special permit issued before the first publication of notice of the public hearing on such ordinance or by-law required by section five, but shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of said public hearing, to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent *except* where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure. Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood . . ." (emphasis supplied).

[4] The fourth paragraph of the present G. L. c. 40A, § 6, reads: "Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage. Any increase in area, frontage, width, yard or depth requirement of a zoning ordinance or by-law shall not apply for a period of five years from its effective date or for five years after January first, nineteen hundred and seventy-six, whichever is later, to a lot for single and two family residential use, provided the plan for such lot was recorded or endorsed and such lot was held in common ownership with any adjoining land and conformed to the existing zoning requirements as of January first, nineteen hundred and seventy-six, and had less area, frontage, width, yard or depth requirements than the newly effective zoning requirements but contained at least seven thousand five hundred square feet of area and seventy-five feet of frontage, and provided that said five year period does not commence prior to January first, nineteen hundred and seventy-six, and provided further that the provisions of this sentence shall not apply to more than three of such adjoining lots held in common ownership. The provisions of this paragraph shall not be construed to prohibit a lot being built upon, if at the time of the building, building upon such lot is not prohibited by the zoning ordinances or by-laws in effect in a city or town."

plaintiff espouses the latter. There is nothing on the face of the fourth paragraph to suggest that it was intended to apply to anything but vacant land. The only reference to a building is found in the last sentence of the paragraph, which sets out one of the circumstances (not applicable here) in which a "lot" may be "built upon." The immediate statutory ancestor of the fourth paragraph (G. L. c. 40A, § 5A, as in effect prior to St. 1975, c. 808, § 3) applied to original construction on vacant lots but not to alterations of existing structures which had become nonconforming, such as the one involved in this case. *Maynard* v. *Tomyl*, 347 Mass. 397, 400 (1964). There is no support for the plaintiff's position in *Sturges* v. *Chilmark,* 380 Mass. 246, 260-261 (1980), decided under the present fourth paragraph, in which the court was dealing with two vacant lots and the only question for decision was whether those lots were "adjoining" within the meaning of the fourth paragraph of the present § 6. The case of *Baldiga* v. *Board of Appeals of Uxbridge,* 395 Mass. 829 (1985), was also concerned with vacant lots.

The portion of the first paragraph of the present § 6 with which we are concerned has no identifiable ancestor in G. L. c. 40A, as in effect prior to St. 1975, c. 808, § 3. That portion made its first appearance, without accompanying explanation (see *Baldiga* v. *Board of Appeals of Uxbridge,* 395 Mass. at 835), in 1974 House Doc. No. 5864. To be specific, the second "except" clause of the first paragraph of § 6 is addressed to "alteration[s], reconstruction, extension[s and] structural change[s] to . . . single or two-family residential structure[s]," none of which is referred to in the fourth paragraph. The second sentence of the first paragraph is specific in its references to extensions and alterations of "[p]re-existing nonconforming structures" (*Fitzsimonds* v. *Board of Appeals of Chatham,* 21 Mass. App. Ct. 53, 55-56 [1985][5]). We have no hesitancy in concluding that the portion of the first paragraph of § 6 which

[5] The *Fitzsimonds* case was not decided until more than four months after the board had acted in this case. It was decided more than eight months prior to the decision of the Superior Court and was specifically brought to the attention of the judge in the course of the trial.

commences with the second "except" clause sets out the statutory provisions which govern a case such as the present. Compare *Walker* v. *Board of Appeals of Harwich,* 388 Mass. 42, 50-52 (1983).

2. *The relevant provision of the zoning by-law.* The next question is whether this case is governed by § 1:3-3-1 [6] or by § 6:4-3 [7] of the Orleans zoning by-law. Section 1:3-3-1 makes specific reference to the present G. L. c. 40A, § 6, and reads almost directly on the language of the second "except" clause of the first paragraph of § 6, as discussed in part 1 hereof. Section 6:4-3 makes no reference to any particular section of c. 40A, but it is clear from a comparison of its language with that of § 9 of c. 40A that § 6:4-3 was intended to implement the general provisions with respect to the issuance of special permits which are found in § 9 and to apply in special permit situations not specifically covered by other sections of the by-law. [8] Compare *Walker* v. *Board of Appeals of Harwich,*

---

[6] "Change, Extension or Alteration: As provided in Section 6 of Chapter 40A, General Laws, a nonconforming single- or two-family dwelling may be altered or extended provided that doing so does not increase the non-conforming nature of said structure. Other pre-existing, non-conforming structures or uses may be extended, altered, or changed in use on Special Permit from the Board of Appeals if the Board of Appeals finds that such extension, alteration or change will not be substantially more detrimental to the neighborhood than the existing non-conforming use. Once changed to a conforming use, no structure or land shall be permitted to revert to a non-conforming use."

[7] "Criteria. Special Permits may be granted when it has been found that the use involved will not be detrimental to the established or future character of the neighborhood and the Town, and when it has been found that the use involved will be in harmony with the general purpose and intent of the Bylaw and shall include consideration of each of the following:

"6:4-3-1   Adequacy of the site in terms of size for the proposed use.
"6:4-3-2   Suitability of site for proposed use.
"6:4-3-3   Impact on traffic flow and safety.
"6:4-3-4   Impact on neighborhood visual character, including views and vistas.
"6:4-3-5   Adequacy of method of sewage disposal, source of water and drainage.
"6:4-3-6   Adequacy of utilities and other public services.
"6:4-3-7   Noise and litter."

[8] Section 1:3-3-1 is but one of several sections of the by-law making provision for the issuance of special permits in particular circumstances.

388 Mass. at 51-52. Accordingly, we hold that it is § 1:3-3-1 which governs in this case.

3. *The proper construction of the statute and the by-law.* The first paragraph of G. L. c. 40A, § 6 (note 3, *supra*), contains an obscurity of the type which has come to be recognized as one of the hallmarks of the chapter. See, e.g., *O'Kane* v. *Board of Appeals of Hingham,* 20 Mass. App. Ct. 162 (1985), and cases cited; *Fitzsimonds* v. *Board of Appeals of Chatham,* 21 Mass. App. Ct. at 55-56. The first "except" clause of the statute is concerned with the application of zoning ordinances and by-laws to nonconforming "structures or uses," to any change in or substantial extension of such a "use", and to the alteration of such a "structure." The second "except" clause deals with the alteration, reconstruction, extension or structural change "to [*sic*] a single or two-family residential structure [which] does not increase the nonconforming nature of [the] structure." The immediately ensuing sentence speaks of not permitting extensions or alterations of "[p]re-existing nonconforming structures or uses" unless there is a finding by the permit or special permit authority that such change, extension or alteration "*shall not be substantially more detrimental than the existing nonconforming use* to the neighborhood" (emphasis supplied).

It will be noted that all the portions of the statute which have just been summarized or quoted except the portion italicized are expressly directed to nonconforming structures as well as nonconforming uses. In the present case, the existing and proposed nonconformities arise out of the position of a house on a lot of land rather than out of the use which is being or is proposed to be made of the house or of the lot on which the house is and would continue to be located. The italicized portion of the statute makes no sense in these circumstances because, as worded, it appears to contemplate a determination of whether an alteration to an existing structure would be more detrimental to the neighborhood by reference to the existing

---

See, e.g., §§ 3:9-1-2 (shoreline zoning district), 4:3-9(b) (sidelines in VC zoning district), 5:7 (timesharing and interval ownership) and 5:11-2-3 (numbers of spaces required in off-street parking areas).

residential use of the land, which would not change if the structure were altered.[9] We are of opinion that this is one of those rare instances in which a court must overcome its reluctance to supply a word or words which were not employed by the Legislature (see, e.g., *Murray* v. *Board of Appeals of Barnstable,* 22 Mass. App. Ct. 473, 479 [1986]) in order to render a statute intelligible and so effectuate its obvious intent. Compare *Chelmsford Trailer Park, Inc.* v. *Chelmsford,* 393 Mass. 186, 196-197 (1984). Accordingly, we read the concluding portion of the second sentence of the first paragraph of the present G. L. c. 40A, § 6, as follows: "shall not be substantially more detrimental than the existing nonconforming *structure or use* to the neighborhood" (emphasis supplied).

On a parity of reasoning, we think the concluding portion of the penultimate sentence of § 1:3-3-1 of the by-law (note 6, *supra*) is to be read: "will not be substantially more detrimental to the neighborhood than the existing non-conforming *structure or* use" (emphasis supplied).

There is one more question of construction. As pointed out in *Fitzsimonds* v. *Board of Appeals of Chatham,* the second "except" clause of the first paragraph of c. 40A, § 6, requires a board of appeals in a case such as this one to make an initial determination whether a proposed alteration of or addition to a nonconforming structure would "'increase the nonconforming nature of said structure'" (21 Mass. App. Ct. at 56). This part of the statute is not concerned with the use of the structure or of the land on which it is located. We think the quoted language should be read as requiring a board of appeals to identify the

---

[9] As one commentator has put it, "[T]here is an apples-compared-to-oranges problem regarding buildings in sentence two of new Section 6 in that any extension or alteration of a [nonconforming] structure depends on a demonstration to and a finding by the [permit granting authority] that the same will not be substantially more detrimental to the neighborhood than the existing nonconforming use. Presumably the Appeals Court will, at some point, instruct [permit granting authorities] how to go about comparing structures to uses." Hays, Application of Chapter 808 to Existing Structures, Uses, Plan Variances and Permits, 22 B.B.J. 17, 19 (1978). The apples and oranges were present but not sorted out in *Tamerlane Realty Trust* v. *Board of Appeals of Provincetown,* 23 Mass. App. Ct. 450 (1987).

particular respect or respects in which the existing structure
does not conform to the requirements of the present by-law
and then determine whether the proposed alteration or addition
would intensify the existing nonconformities or result in addi-
tional ones. If the answer to that question is in the negative,
the applicant will be entitled to the issuance of a special permit
under the second "except" clause of G. L. c. 40A, § 6, and
any implementing by-law. Only if the answer to that question
is in the affirmative will there be any occasion for consideration
of the additional question illuminated in the *Fitzsimonds* case
(21 Mass. App. Ct. at 56).

4. *Shortcomings in the board's and the judge's findings.*
The board found that the addition proposed in this case "would
increase the non-conforming nature of the present structure."
That finding is not suspect because there was evidence in the
Superior Court from which it could be found (as was agreed
at the argument before us) that at least one portion of the
addition would protrude beyond the footprint of the present
structure.

When it came to the plaintiff's alternative request for a spe-
cial permit, the board found that the proposed addition would
result in increasing the height of the existing structure by nine
feet [10] and that "this would interfere with the views or vistas
of the surrounding property owners and be substantially more
detrimental to the neighborhood and the town." The references
to the "town", which appears in § 6:4-3 of the by-law (note
7, *supra*) but not in the first paragraph of G. L. c. 40A, § 6
(note 3, *supra*) or in § 1:3-3-1 of the by-law (note 6, *supra*),
and to "views and vistas," which appear in § 6:4-3-4 of the
by-law (note 7, *supra*) but not in the statute or in § 1:3-3-1 of
the by-law, strongly suggest that the board may have proceeded
under the wrong special permit provisions of the by-law. See
part 2 hereof. We do not say that the board, in the exercise
of its discretion, could not properly consider the factors set

---

[10] The judge found that the increase would be sixteen feet. Neither the
board nor the judge made any finding that the increase in height, whatever
it might be, would result in any nonconformity under the present by-law.
See the *Fitzsimonds* case, 21 Mass. App. Ct. at 57.

out in § 6:4-3-4 of the by-law in determining whether the proposed addition would result in a structure substantially more detrimental to the neighborhood than the existing structure (part 3 hereof). We do say that on this record it does not appear with any measure of certainty that the board proceeded under the first paragraph of c. 40A, § 6, and § 1:3-3-1 of the by-law.

The board, in its decision, gave no indication what it considered the "neighborhood" to be. The board referred loosely to "surrounding property owners," but we do not know whether it had in mind the owners of lots contiguous to or across Cliff Road from the plaintiff's lot, all the fifteen owners to whom notice of the public hearing was given under G. L. c. 40A, § 11, the owners of all the other 229 lots in the subdivision which includes the plaintiff's lot, or something else.[11] There is need for clarification in this area because at the hearing in the Superior Court there was evidence of whether the top of the proposed addition would be visible from certain nearby properties and from certain public landings, some of which are undoubtedly parts of the "town" within the meaning of § 6:4-3 of the by-law but may not be parts of the "neighborhood" within the meaning of the first paragraph of c. 40A, § 6, and § 1:3-3-1 of the by-law.

The judge's findings and rulings are subject to many of the same frailties. For instance, he said in the early part of his findings that the plaintiff's application for a special permit had been filed under § 1:3:3-1 of the by-law, and he referred to "compliance with section 6 of chapter 40A." Somewhat later, the judge ruled (erroneously) that the issuance of a special permit of the type sought in this case is governed by § 6:4-3 of the by-law. There are additional problems. The judge found that "[t]he planned construction would be a substantial extension of the non-conforming use" and that "[t]he extensive increase in use of the lot through expansive decking will materially change the structure." Nowhere did the judge make any finding on the question whether the proposed addition would increase the nonconforming nature of the structure or the ques-

---

[11] The judge nowhere used the word "neighborhood."

tion whether the addition would result in a structure not substantially more detrimental to the neighborhood than the existing structure.

It is clear that the judge failed to make independent findings of fact (G. L. c. 40A, § 17) on all the issues raised by the appeal to the Superior Court before determining the validity of the board's decision. See, e.g., *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 558-559 (1954); *Planning Bd. of Springfield* v. *Board of Appeals of Springfield*, 355 Mass. 460, 462 (1969); *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 295, 298-300 (1972). There is nothing in the judge's findings that can be relied on to salvage either aspect of the board's decision.

The judgment is reversed, and the decision of the board of appeals is annulled; the case is to be remanded to the board for further proceedings consistent with this opinion; the board, after new notices under G. L. c. 40A, § 11, may reopen the hearing for the purpose of taking further evidence; the board shall render a new decision; the Superior Court may retain jurisdiction over the case; costs of appeal are not to be awarded to any party.

*So ordered.*