BERNARD GOLDHIRSH *vs.* JOHN W. MCNEAR, individually & as trustee,[1] & others[2] (and two companion cases[3]).

No. 90-P-486.

Suffolk. September 17, 1991. - April 28, 1992.

Present: PERRETTA, PORADA, & LAURENCE, JJ.

*Zoning*, Nonconforming use or structure.

A carriage house converted to a single family structure was entitled to the protection afforded residential structures by the second "except" clause of the first paragraph of G. L. c. 40A, § 6, and a similar by-law provision, where the structure was nonconforming by reason of its setback and not its use. [458-460]

Where a town's board of appeals failed to consider whether a proposed full second story addition within the foundational footprint of a single-family residence that was nonconforming with respect to a setback requirement would intensify the existing nonconformity or result in additional nonconformity, the case was to be remanded to the board for such a determination. [460-461]

CIVIL ACTIONS commenced in the Land Court Department on January 3, 1989; March 6, 1989; and March 16, 1989, respectively.

The cases were consolidated for trial and were heard by *Marilyn M. Sullivan*, J.

*Kevin M. Dalton* for the plaintiff.

[1]John W. McNear owns a one-third undivided interest in the property in his individual capacity and an additional one-third undivided interest as trustee under a will. The final one-third undivided interest is owned by the defendants John W. McNear, Jr., Joan K. McNear, and Kimberly I. McNear. In referring to McNear throughout this opinion, we refer to all the McNear defendants.

[2]Board of appeals of Manchester, John W. McNear, Jr., Joan K. McNear, and Kimberly I. McNear.

[3]The companion cases involve substantially the same parties.

*Charles G. Kadison Jr.* (*Francis L. Flatley* with him) for the defendants.

PERRETTA, J. By appeal from a Land Court judgment in these consolidated cases, we are required to determine whether a carriage house, which was converted to a single-family structure, is entitled to the protection afforded residential structures by the second "except" clause of the first paragraph of G. L. c. 40A, § 6, and the similar by-law provision. We conclude that the building is entitled to that protection, but, because the defendant board failed to consider whether the owners' changes to the residential structure would increase its nonconforming nature, we reverse the judgment.

1. *The history of the structure.* We describe the history of the structure as it appears in the trial judge's decision, which was based upon the parties' agreed statement of facts. The structure was built as a carriage house in the late Nineteenth Century upon an estate in Manchester. It was situated only two feet from the side line of the lot upon which the owner's main house, or dwelling, was also located.

In 1945, Manchester adopted its zoning by-law. The property in question was zoned for single-family residential and accessory use. By definition, an accessory use did not include dwellings. However, a garage or stable could be used as living quarters for an employee of the owner of the house to which the garage or stable was accessory. The by-law provided that only a one-story accessory structure could be built within twenty feet of the side lotline but not within five feet of that line. The carriage house protruded three feet into the required sidelot setback distance and was, therefore, a nonconforming structure.

Several pertinent events occurred between 1952 and 1953. In September, 1952, that part of the land upon which the carriage house was located was conveyed out from the main estate. Next, the structure was converted to a single-family dwelling sometime between 1952 and 1953. At that time, § IV(A) of the by-law provided, in part: "No increase in the extent of the non-conforming use of the building or land may

be made except that any such non-conforming building may be added to, enlarged, reconstructed or replaced, and such addition, enlargement, reconstruction or replacement used for the purpose or for a purpose substantially similar to the purpose, for which the original building may lawfully be used if authorized by the Board . . . ." A variance from the street setback requirement was granted to the then owner in 1953, so that a one-car garage and a "wind-way" could be built.

In 1955, the owner decided to sell the property, but the prospective buyer was concerned about whether the structure could be used lawfully as a single-family residence. To put all doubts to rest, the owner applied to the board for a variance "to alter and to maintain the dwelling house on the . . . lot as a private dwelling in its present location . . . which is nearer to the street line and the northerly side line than is permitted . . . ." This variance was granted, and the McNear family purchased the property.

Some thirty-two years later, McNear applied for a building permit to make alterations to the structure. The application incorrectly recited that the property had never been the subject of a variance and described the proposed alterations as the enclosure of an existing deck, the addition of a second deck, and interior alterations. The building inspector granted the application on September 30, 1987. Two months later, McNear filed an additional application seeking to replace the existing dormers with a full second level to the carriage house.

Reasoning that this work would be a vertical expansion of the carriage house within its original nonconforming footprint, the building inspector also granted this application. Goldhirsh, an abutter, attempted to stop the work but made some procedural mistakes. Many of the alterations and the improvements had been undertaken and some completed before he formally requested the building inspector to enforce the zoning by-law. The building inspector then determined that, because the property had been the subject of a variance in 1955 (a fact unknown to him when he granted

the permits), McNear would need a variance before he could continue with the work. The board granted McNear a special permit for the work requested on the first application and concluded that he had the right to expand vertically within the structure's original footprint.

During the proceedings on his appeal to the Land Court, Goldhirsh withdrew his objections to the granting of the special permit and confined his objections to the work within the footprint.[4] The trial judge concluded that as the structure could be legally used for residential purposes under the 1945 by-law, even if not enlarged, the 1955 variance was immaterial; it was the structure and not its use which was nonconforming. Because the additions and alterations were within the preexisting footprint, she concluded that the board had correctly determined that McNear was entitled to make the changes.

2. *The zoning statute and by-law.* As here pertinent, the first paragraph of G. L. c. 40A, § 6, as inserted by St. 1975, c. 808, § 3, reads: "Except as hereinafter provided, a zoning ordinance or by-law . . . shall apply . . . to any alteration of a structure . . . to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent *except* where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure" (emphasis supplied). Goldhirsh claims that McNear is not entitled to the special treatment afforded residential structures by § 6 and a 1984 amendment to the by-law.[5] He argues that residential structures are given prefer-

---

[4]There is no need to discuss McNear's contention that Goldhirsh is not an aggrieved person. See *Chongris* v. *Board of Appeals of Andover,* 17 Mass. App. Ct. 999, 1000 (1984), and cases therein cited; *Cummings* v. *City Council of Gloucester,* 28 Mass. App. Ct. 345, 349-350 (1990).

[5]In 1984, Manchester added a second sentence to § 6.1.2 of its by-law. As in effect in 1987, the by-law tracks G. L. c. 40A, § 6, in substance and reads: "A nonconforming structure or use may be changed, extended or altered, provided that in each case the Board of Appeals grants a special permit therefor after finding that such change, extension or alteration is not substantially more detrimental or injurious to the neighborhood than

ential treatment only where the nonconforming building was used as a residence at the time of the adoption of the by-law making the structure nonconforming. Because there was no evidence, his argument continues, to show that anyone resided in the carriage house in 1945, it could not thereafter be used lawfully as a dwelling without a variance. He cites *Mendes* v. *Board of Appeals of Barnstable*, 28 Mass. App. Ct. 527, 531 (1990), as support for his premise that the 1955 variance does not provide McNear with a basis for claiming the protection which the statute and by-law afford residential structures.

We agree with the trial judge that the 1955 variance is immaterial to the resolution of the dispute. That the carriage house might not have been occupied by an employee of the owner of the main house in 1945, or anyone else, does not change the fact that the property was in a district zoned for residential use. There can be no dispute that had the structure been situated farther back from the side lotline, its use as a residence would have been lawful without a variance. Compare *Mendes* v. *Board of Appeals of Barnstable*, 28 Mass. App. Ct. at 530, where the building was not in existence when the by-law was adopted and the variance allowed the owners to construct a commercial building in a residential zone.

Even assuming that the structure could not have been used as a single-family residence without the granting of a use variance, our conclusion, that the carriage house is entitled to the special protection afforded residential structures, would be no different. In applying the second "except" clause of § 6 and the by-law to the present structure, the appropriate focus is not how or when the nonconforming building came to be used as a single-family dwelling. Rather, the question is whether the proposed changes to the nonconforming residential structure will increase its nonconforming nature. As ex-

the existing nonconforming structure or use. The above requirement does not apply to such an extension, alteration, reconstruction or structure change to a single or two family residential structure that does not increase the nonconforming nature of that structure."

plained in *Rockwood* v. *Snow Inn Corp.*, 409 Mass. 361, 364 (1991): "If the first and second sentence [of § 6] are read together, the statute permits extensions and changes to nonconforming structures if (1) the extensions or changes themselves comply with the ordinance or by-law, and (2) the structures as extended or changed are found to be not substantially more detrimental to the neighborhood than the preexisting nonconforming structure or structures . . . . [A]s to a single or two-family residence, structures to which the statute appears to give special protection, the zoning ordinance or by-law applies to a reconstruction, extension, or change that 'would intensify the existing nonconformities or result in additional ones.' *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 22 (1987)."

As set out in *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 21-22 (1987), an application for changes to a residential structure "requir[es] a board of appeals to identify the particular respect or respects in which the existing structure does not conform to the requirements of the present by-law and then determine whether the proposed alteration or addition would intensify the existing nonconformities or result in additional ones." Should the board conclude that there will be no intensification or addition, the applicant will be entitled to the issuance of a special permit. If the conclusion is otherwise, the applicant will be required to show that the change will not be "substantially more detrimental than the existing nonconforming structure or use to the neighborhood." *Id.* at 21. See also *Fitzsimonds* v. *Board of Appeals of Chatham*, 21 Mass. App. Ct. 53, 56 (1985).

3. *The decisions of the board and the trial judge.* The determination required by *Fitzsimonds* and *Willard* was not made by either the board or the trial judge. It appears from both decisions that the determination was deemed unnecessary for the reason that the changes to the structure were a vertical expansion which did not exceed the by-law's height limitation. Since the vertical expansion was within the preexisting foundational footprint, the change could not result in

an increase in the structure's nonconformity, protrusion into the setback area.

In *Willard*, an addition which would protrude beyond the existing footprint was found to constitute an increase in the nonconforming nature of the structure. However, we see nothing in *Willard* which supports the proposition that there will never be an increase in a structure's nonconforming nature where the proposed alterations are confined to the existing footprint.

Whether the addition of a second level to the carriage house will intensify the nonconformity is a matter which must be determined by the board in the first instance. The fact that there will be no enlargement of the foundational footprint is but one factor to be considered in making the necessary determination or findings. See *Fitzsimonds* v. *Board of Appeals of Chatham*, 21 Mass. App. Ct. at 57; *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. at 21-23. Cf. *Nichols* v. *Board of Zoning Appeal of Cambridge*, 26 Mass. App. Ct. 631, 634 (1988).

4. *Conclusion.* The judgment is reversed, and a new judgment is to enter annulling so much of the decision of the board of appeals as provides that the defendants are entitled as matter of right to make those alterations which do not expand the foundational footprint of the structure. The judgment shall also provide that the cases are to be remanded to the board for further proceedings consistent with this opinion; the board, after new notices under G. L. c. 40A, § 11, may rehear the matter for the purpose of taking further evidence; the board shall render a new decision; the Land Court may retain jurisdiction over the cases; costs of appeal are not to be awarded to any party.

*So ordered.*