Fecteau, J.
This matter involves an appeal, under the provisions of G.L.c. 40A, §17, challenging a decision of the Zoning Board of Appeals of the Town of Clinton to rescind the grant of a building permit by the building inspector to the plaintiff. The plaintiff contends that the grant of a building permit to him to construct a second story addition to a pre-existing, single-story garage was proper, notwithstanding that it did not conform to the zoning by-laws of the town, insofar as the garage was within the set-back requirements for accessory buildings. The defendants Prinos are abutters to the plaintiff on the side closest to the structure in question, whose home, at its closest point to the structure, is five feet away. It was the Prinoses who sought enforcement of the zoning ordinance from the building inspector and, upon his rejection of their request, claimed an appeal to the board of appeals.
The plaintiff claims that the addition complies with G.L.c. 40A, §6, in that it is not substantially more *635 detrimental to the neighborhood than the existing non-conforming structure. The defendants contend otherwise. The zoning board of appeals found that the intended addition required their approval under the special permit process and that the structure is more detrimental to the neighborhood than the pre-existing structure.
Trial was conducted before me, sitting without jury, on March 29, 2002, and the matter was taken under advisement at that time. Upon consideration of the evidence, the following findings of fact and rulings of law are made.
FINDINGS OF FACT
1. The plaintiff, Lloyd Stevenson, is the present owner of a single-family residence at 352 Sterling Street, Clinton. He has resided there continuously since his discharge from the armed services in 1946. It was owned previously by an uncle and then by his parents. During all relevant time, a garage has existed on his property. It was constructed partially in-ground, into the side of a banking at the front of the property and had a flat roof. The plaintiff is a retired carpenter, on a service-connected disability. Since the enactment by the Town of Clinton of its zoning bylaws, the garage has not complied with set-back requirements for accessory buildings, among others.
2. Since 1979, the defendants Dennis and Barbara Prinos have owned and resided at 348 Sterling Street, next door to the plaintiff. The homes of both parties are elevated approximately 7-10’ from the street level and appear in the photographs (ex. 6) to sit back in their respective lots approximately 22-25’. The front of the garage is approximately 10’ from the surfaced portion of the street and the entire length of the garage/structure is closer to the street than the closest point of the home of either of the parties. The wall of the plaintiffs garage nearest to the Prinoses is approximately 3 feet from the boundary line between their properties and the nearest point of the plaintiffs garage to the Prinoses’ home is approximately 5’. Although it was not stated in the testimony, it appears that the property in question is located in the R-1 zone, according to the zoning map of the Town of Clinton (ex. 2). In 1990, the town enacted its current zoning by-laws, as amended (ex. 1), under which the plaintiffs garage is a pre-existing, non-conforming structure, as it is violates the set-back requirement as applied to accessory structures: “accessory structures shall only be allowed in side or rear yards and shall conform to a minimum side and rear yard of 8 feet.” Zoning By-Laws of the Town of Clinton, Section 3.4.12 (ex. 1).
3. Apparently over the course of many years, the integrity of the garage’s flat roof was compromised by the elements, and it was in such an advanced state of decay that the plaintiff caused a waterproofing expert to examine it. Thereafter, it was suggested by him to the plaintiff that the garage be built up by some kind of addition or pitched roof. In September 1998, Stevenson followed up on this suggestion by applying to the building inspector of the Town of Clinton for a building permit to build a structure above the garage, to be built upon the existing walls of the garage, and to be used, according to the application for the permit, for storage and carpentry shop. The plaintiff testified that he needed space to store many items of furniture acquired over the years from his parents and uncle and apparently some power tools from his former craft.
4. Believing that the intended plans of the plaintiff fell within the permitted scope of the nonconforming use, the building inspector issued a building permit to the plaintiff and he began construction, apparently doing most, if not all, of the work himself. Shortly after the construction began, and when it became apparent that he was constructing something more substantial than merely repairing the roof, on or about November 21, 1998, the abutters contacted the building inspector to inquire as to the project and whether the proper permits had been obtained, and, later, sought enforcement of the zoning ordinance. He wrote back and informed them that it was, in his opinion, in compliance with the zoning by-laws and he declined to take any further action. The Prinoses then filed an appeal with the zoning board of appeals for the town on December 9, 1998, presumably under the provisions of G.L.c. 40A, §7-8. On March 14, 1999, a public hearing was held; on April 26, 1999, the board filed its decision to rescind the permit issued by the building inspector.
5. The addition is wood-frame construction, with a pitched roof. According to the “plan” submitted by the plaintiff as part of his application for the building permit which merely shows the perimeter of the garage, the “footprint” of the structure is approximately 22’, 8" by 14’, 8". The pre-existing garage is approximately 7’ in height. The addition is built upon the walls of the garage, in the nature of a foundation, and is an additional 7’ in height to the horizontal plane of its ceiling line, and, with a “6-pitch” roof, an additional 5’ in height is added at the ridge line. This results in a structure that is a total of approximately 19’ in height from its street-level, and 12’ in height taller than the original roof line which was located approximately at the ground level of the two residences. Moreover, according to a pre-construction photograph, the garage roof was either partly covered or obscured by earth or vegetative growth.
DISCUSSION
By this action, the plaintiff seeks to annul the decision of the Zoning Board of Appeals to rescind the building permit issued by the building inspector. He contends that his alteration and use of the structure in question is permitted as merely a continuation, in kind and degree, of the pre-existing, non-conforming use and is no more detrimental to the neighborhood than was the former in-ground garage. The defendants *636 contend otherwise claiming that the addition to the premises is either a change or a substantial extension of the prior non-conforming use to the detriment of the neighborhood. The structure does not conform to the zoning by-law at least in the following respect: “accessory structures shall only be allowed in side or rear yards and shall conform to a minimum side and rear yard of 8 feet.” Zoning By-Laws of the Town of Clinton, Section 3.4.12 (ex. 1). An accessory structure is defined in the by-laws as a “. . . building which is subordinate and customarily incidental to and located on the same lot with the principal use or building to which it is accessory.” Section 11.
The plaintiff claims protection under the provisions of G.L.c. 40A, Sec. 6, first paragraph, which states, in pertinent part:
Except as hereinafter provided, a zoning . . . by-law . . . shall not apply to structures or uses lawfully in existence . . . , but shall apply to any change or substantial extension of such use ... to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent . . . Pre-existing non-conforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing non-conforming use to the neighborhood.
The language of the last sentence of this paragraph has, relevant to the issues in the case at bar, been the subject of appellate engrafting by the addition of the word “structure” to the detriment analysis so that the last phrase, by such engraftment, is to be read as follows: “no such extension or alteration shall be permitted unless there is a finding by the permit granting authority . . . that such change, extension or alteration shall not be substantially more detrimental than the existing non-conforming structure or use to the neighborhood.” Willard v. Board of Appeals of Orleans, 25 Mass.App.Ct. 15, 21 (1987) [underline added]. There, the court found it necessary to interpret the sentence in question as including “structure” to render the statute “intelligible and to effectuate its obvious intent.” Id.
The by-laws of the town of Clinton contain a provision similar to the statute: “any other non-conforming structure or use, the change or alteration of which is not otherwise permitted as a matter of right by the provisions hereof, may be extended, altered, reconstructed or repaired, provided that in each case the Board of Appeals, in accordance with the procedures and provisions of Section 9.2.3 hereof,[1] shall find that such extension, alteration, reconstruction or repair is not substantially more detrimental to the neighborhood than the existing non-conforming structure or use.” Section 2.8.3. Thus, it is clear that the procedure required for the plaintiff to obtain permission for an alteration is by application for special permit and that the application must be made to the special permit granting authority designated by the zoning by-laws of the town, namely, the Board of Appeals.
Substantially similar to the case at bar is that of Goldhirsh v. McNear, 32 Mass.App.Ct. 455 (1992). In that case, resulting in a remand to the board of appeals, the structure involved was a carriage house that was nonconforming with respect to set-back requirements. There, the court annulled so much of the decision of the board that provided that a second-story addition was permitted as a matter of right so long as the proposed alterations did not expand the original footprint of the structure. “Whether the addition of a second level to the carriage house will intensity the nonconformity is a matter which must be determined by the board in the first instance. The fact that there will be no enlargement of the foundational footprint is but one factor to be considered in making the necessary determination or findings.” Id. at p. 461. That case, like Willard v. Board of Appeals of Orleans, 25 Mass.App.Ct. 15 (1987), implicated an exception in c. 40A, §6 not applicable herein, involving the intended alteration of one- or two-stoiy residential structures. The distinction made by the relevant provisions of the statute between such residential alterations and those to other buildings have been explained as follows: “(a]n alteration, reconstruction, extension, or structural change of a nonconforming single-family or two-family residential structure is legitimated under the second ‘except’ clause of the first sentence if it ‘does not increase the nonconforming nature of the said structure’; otherwise (as occurs in certain events in regard to changes of other structures referred to in the language preceding the ‘except’ clause), it must be submitted to the special permit procedure of the second sentence for a determination by the board of the question whether it is ‘substantially more detrimental than the existing nonconforming use to the neighborhood.’ ” Fitzsimonds v. Board of Appeals of Chatham, 21 Mass.App.Ct. 53, 56(1985). Clearly what is at issue herein is not a residential structure. Moreover, only the board of appeals had the authority to examine the proposed alteration herein and its possible detriment to the neighborhood.
The plaintiff has taken a relatively obscure, flat-roofed, partly in-ground structure, the height of which was at ground level with respect to the nearby houses, and constructed above it a 22’ by 14’ room with a pitched roof adding approximately 12’ to the height of the pre-existing structure, obliquely to the front of the Prinoses’ home as well as that of the plaintiff. In addition, the pre-existing, non-conforming use was a *637 garage, which is typically for the storage of a motor vehicle. The plaintiffs intent, according to his testimony, is to use the addition for storage of furniture and equipment; his original application also included an intent to use it as a carpentry shop. The addition has, in effect, by virtue of its size and intended use, become a new and primary use of the structure, with the garage below simply like a cellar. According to the plaintiffs application for the building permit,[2] the intended use of the structure was to change to “mixed use.” There is a three-part test to determine whether there has been a “change” or a “substantial extension” of a use: (1) whether the current use reflects the nature and purpose of the prior use; (2) whether there is a difference in the quality or character, as well as degree, of use; and (3) whether the current use is different in kind in its effect on the neighborhood. Bridgewater v. Chuckran, 351 Mass. 20, 23 (1966). The property owner has the burden to show that the current use is sufficiently similar to the prior, lawful non-conforming use. Bridgewater, supra, at 24.
The addition to the structure in question is a substantial change to the size and use of the structure and, given its location, is significantly different from and more detrimental to the neighborhood than the pre-existing structure. Notwithstanding the plaintiff s good faith reliance upon the building inspector, the building inspector did not have authority, under the By-Laws of the Town of Clinton, to grant a building permit under these circumstances. The by-laws require that the plaintiff seek a special permit from the Board of Appeals for alteration of this nonconforming structure, which board may then conduct the inquiry as required by G.L.c. 40A, §6, and the pertinent provisions of the by-laws. Given the procedural posture of the case, wherein the abutters applied to the building inspector /zoning agent for enforcement of the zoning by-laws, presumably under the provisions of G.L.c. 40A, §7-8, and upon the failure of the building inspector to enforce the statute and by-laws in question, they were entitled to appeal his decision to the Board of Appeals. The decision of the Board of Appeals to rescind the issuance of the building permit is to the effect that plaintiff failed to satisfy his burden to show that the alteration is not substantially more detrimental to the neighborhood than the pre-existing structure. The decision of the board, therefore, must be affirmed.
ORDER FOR JUDGMENT
For the foregoing reasons, it is ordered that judgment enter on behalf of the defendants. The decision of the Board of Appeals of the Town of Clinton is AFFIRMED. The judgment shall further (1) enjoin the plaintiff from the use of the structure as presently altered from the structure as it existed prior to September 10, 1998, (2) he is hereby ordered to apply, within 30 days hereof, to the building inspector for all necessary permits for the removal or demolition of the offending addition to the structure, and (3) he is hereby ordered to remove or demolish the offending addition to the structure, in accordance with all applicable laws, within 90 days thereafter.[3]

 Section 9.2.3 of the by-laws states: “[t]he Board of Appeals shall hear and decide only such special permits as are specifically authorized by the terms of this By-Law and in accordance with Section 7.2.1.”

 The plaintiffs application for the building permit (ex. 3) upon which the inspector relied in the issuance of the building permit was incomplete and/or misleading. No person inspecting the file at the office of the building inspector would have been in a position to comprehend the extent of the alteration contemplated by the applicant. Indeed, notwithstanding the applicant’s description of the work in Section 6 of the application “put building on existing garage in-ground for one reason. Garage is leaking — I am paying taxes on building I cannot use — it leaks — waterproofer said only way to fix it [unreadable word] pitched roof,” the fact that “existing building” and neither “alteration” nor “addition” were checked off could be read to imply that only a pitched roof was intended to be added to the existing garage and that the garage itself was intended to be used for storage and a carpentry shop; there is no specific reference in the application to a one-story addition.

 Thls order relates only to the addition to the garage that was built by the plaintiff following his receipt of a building permit from the building inspector and the order is not intended to affect the plaintiffs right to maintain the garage as a pre-existing, nonconforming structure; to the extent that the plaintiff may have altered the nature or construction of the pre-existing roof during construction of the addition, the order is not intended to prohibit the construction of a weather-tight roof over the garage.