RICHARD J. GLIDDEN, trustee,[1] & others[2] vs. ZONING BOARD OF
APPEALS OF NANTUCKET & others.[3]

No. 09-P-1755.

Suffolk. April 13, 2010. - August 18, 2010.

Present: MILLS, SMITH, & TRAINOR, JJ.

*Zoning,* Nonconforming use or structure, Lot size, Variance, Special permit,
By-law. *Practice, Civil,* Summary judgment.

In a civil action challenging the validity of a special permit issued by a town's
zoning board of appeals (board) that allowed the defendant to demolish
and reconstruct a pre-existing nonconforming structure at a different site
on his lot, a Land Court judge properly entered summary judgment in
favor of the defendant, where the board correctly determined that a lot line
reconfiguration authorized by a previously-granted variance did not intensify
any nonconformities (but rather eliminated one setback nonconformity)
and therefore had no effect on the structure's protected status under G. L.
c. 40A, § 6; where the board logically and reasonably interpreted a bylaw
regulating reconstruction of pre-existing nonconforming structures on lots
where the permissible ground cover ratio is exceeded to allow reconstruct-
ing a structure at a different site; and where the judge properly concluded
that no genuine issue of material fact existed as to whether the structure
was demolished after the issuance of the special permit. [405-410]

CIVIL ACTION commenced in the Land Court Department on
December 27, 2005.

The case was heard by *Charles W. Trombly, Jr.,* J., on a mo-
tion for summary judgment.

*Edward Woll, Jr.,* for the plaintiffs.

*Peter D. Kyburg* for Brian Conroy.

*Kimberly M. Saillant* for zoning board of appeals of Nantucket
& another.

---

[1]Of the 38 Monomoy Road Realty Trust.

[2]Jeffrey A. McDermott and Ashley B. McDermott.

[3]The town of Nantucket, and Brian Conroy, trustee of the 42 Monomoy
Realty Trust.

SMITH, J. The plaintiff landowners Richard J. Glidden, as trustee of the 38 Monomoy Road Realty Trust (Glidden), and Jeffrey and Ashley McDermott (McDermotts), appeal from the entry of summary judgment dismissing their appeal from a decision of the zoning board of appeals of Nantucket (board) denying their request for enforcement of the zoning by-law with respect to a construction project on an abutting property. We affirm.

*Background.* The following facts are not in dispute. The plaintiffs are the owners of a parcel of land known as and numbered 38 Monomoy Road in Nantucket (town). Defendant Brian Conroy, as trustee of the 42 Monomoy Realty trust, is the owner of a parcel of land known as and numbered 42 Monomoy Road (lot). The lot abuts 38 Monomoy Road. When the town enacted a zoning by-law (by-law) in 1972, the buildings on the lot became preexisting nonconforming structures. The lot, located in a limited use general-1 zoning district, was nonconforming as to lot area, front yard setback, rear yard setback, and maximum ground cover ratio. In 1995, the then-owner of the lot sought a variance to bring one side yard setback into conformity with the by-law by exchanging an equally-sized portion of land with the northerly abutting parcel.[4] On August 18, 1995, the board allowed the variance, and the abutting landowners then effected the conveyance. As a result of the 1995 variance, the lot's northern border was altered, thereby bringing one side yard setback into conformity. In the variance decision, the board noted the land swap would not cause either parcel to "become more nonconforming in any respect."

In 2004, Brian Conroy purchased the lot as trustee of the 42 Monomoy Realty Trust. At that time, the lot contained a main house and a secondary structure, a garage. As noted, the buildings predated the enactment of the 1972 by-law.

In 2005, Conroy applied for a special permit to remove the existing garage and build a pool house at a different site on the lot. The proposed pool house would conform to the setback and separate scalar requirements of the by-law, and have a ground cover of 620 square feet, five feet less than the pre-existing

---

[4]The land exchange did not involve the property located at 38 Monomoy Road.

garage. On February 17, 2005, the board issued a decision granting the special permit pursuant to § 139-33.A of the by-law.

In August, 2005, after construction had commenced, the plaintiffs requested, by letter, that the town's zoning enforcement officer issue a stop work order and revoke the building permits that had issued for the lot.[5] The zoning enforcement officer refused, and the board upheld his decision. The plaintiffs thereafter appealed the board's decision to the Land Court pursuant to G. L. c. 40A, § 17. In their amended complaint, the plaintiffs principally allege that the board had no authority to issue a special permit under the by-law because the 1995 variance changed the status of the structures on the lot. The plaintiffs also sought a declaratory judgment pursuant to G. L. c. 231A, regarding alleged violations of the by-law, and specific enforcement of the by-law.

Before the Land Court, the plaintiffs advanced their argument concerning the 1995 variance, in addition to claiming that the pertinent section of the by-law, § 139-33.A(9), did not authorize the proposed project. In granting summary judgment for the defendants, the Land Court judge disagreed with the plaintiffs' assessment of the variance and ruled that the board's interpretation of the by-law was logical and reasonable. On appeal, the plaintiffs restate their former arguments. They also challenge the judge's determination that no genuine issue of material fact existed as to the date the garage was demolished.[6]

*Discussion.* "Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law." *Ng Bros. Constr., Inc.* v. *Cranney*, 436 Mass. 638, 643-644 (2002). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). Our review of the legal validity of the board's decision on the undisputed facts and the summary judgment record is "circumscribed: the deci-

---

[5]The McDermotts have a residence in London, and apparently were not aware of the project until August, 2005, when they arrived at their home on Nantucket. Their lack of notice of the project is immaterial to our determination here.

[6]The judge relied on a paragraph previously struck from a contractor's affidavit in determining that there was no material issue of fact as to when the garage was demolished. An amended judgment and memorandum of decision reflect that the error had no substantive bearing on the judge's decision.

sion of the board 'cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.' " *Roberts* v. *Southwestern Bell Mobile Sys., Inc.,* 429 Mass. 478, 486 (1999), quoting from *MacGibbon* v. *Board of Appeals of Duxbury,* 356 Mass. 635, 639 (1970). See *Lobisser Bldg. Corp.* v. *Planning Bd. of Bellingham,* 454 Mass. 123, 127 (2009). Further, "[t]he reasonable construction that a zoning board of appeals gives to the by-laws it is charged with implementing is entitled to deference." *Cameron* v. *DiVirgilio,* 55 Mass. App. Ct. 24, 29 (2002).

1. *The 1995 variance.* Because the structures on the lot predate the enactment of the by-law, they are protected from the by-law's requirements by G. L. c. 40A, § 6, first par.[7] On appeal, the plaintiffs maintain that following the 1995 variance, the lot's structures lost their protection under c. 40A, § 6, and therefore could not be the subject of a special permit under the by-law.[8]

---

[7]General Laws c. 40A, § 6, first par., as inserted by St. 1975, c. 808, § 3, provides in relevant part that:

"Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence . . . before the first publication of notice of the public hearing on such ordinance or by-law . . . , but shall apply to . . . any reconstruction . . . begun after the first notice of said public hearing . . . except where . . . reconstruction . . . [of] a single or two-family residential structure does not increase the nonconforming nature of said structure. Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority . . . that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood."

[8]The plaintiffs partially frame their argument in terms of the protected status of the lot, as opposed to the structures and uses on the lot, which are the subjects of G. L. c. 40A, § 6, first par. Thus, the relevant question, which we address *infra,* is whether the lot's change in boundary caused any change, alteration, or extension of the use or structures on the lot.

We note that a change in a lot's boundary lines potentially would be relevant if G. L. c. 40A, § 6, fourth par., were applicable. That portion of the statute, however, applies only to vacant land. See *Willard* v. *Board of Appeals of Orleans,* 25 Mass. App. Ct. 15, 18 (1987); *Dial Away Co.* v. *Board of Appeals of Auburn,* 41 Mass. App. Ct. 165, 168 (1996). The structures on the lot predate the enactment of the by-law; therefore G. L. c. 40A, § 6, fourth par., does not apply.

Under the terms of G. L. c. 40A, § 6, a structure or use is no longer shielded from the requirements of a zoning by-law if a change, extension, or alteration is deemed to be substantially more detrimental to the neighborhood than the pre-existing, nonconforming use or structure. See *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 21 (1987). No extension or alteration occurred in this case. The lot line reconfiguration that resulted from the 1995 variance caused no change in the over-all size of the lot. No existing nonconformities were extended, and no new nonconformities were created. Because the conveyance caused no change in any of those aspects of the lot, there could be no intensification of the nonconformities present. Contrast *Bransford* v. *Zoning Bd. of Appeals of Edgartown*, 444 Mass. 852, 853 (2005) (Greaney, J., concurring) (proposed expansion of structure's footprint on undersized lot intensified nonconformities present); *Bjorklund* v. *Zoning Bd. of Appeals of Norwell*, 450 Mass. 357, 358 (2008) (same). The 1995 variance accordingly had no effect on the structures' protected status.

Nevertheless, even if the land swap did alter or extend the use or structures on the lot, the requirements of G. L. c. 40A, § 6, were met at that time. The board, as the "permit granting authority," expressly provided in the variance decision that the alteration of the lot lines had no effect on the nonconformities present, and that zoning relief could be granted "without substantial detriment to the public good." Rather, as the board noted, the land swap effectively eliminated one setback nonconformity.

2. *Interpretation of by-law § 139-33.A(9).* The plaintiffs argue that even if the structures did not lose their protection under G. L. c. 40A, § 6, the special permit issued was not authorized by § 139-33.A(9) of the by-law, which regulates reconstruction of pre-existing nonconforming structures on lots where the permissible ground cover ratio is exceeded.

Section 139-33.A(9) of the by-law provides that:

"If the preexisting nonconforming structure(s) upon any lot exceed the permitted ground cover ratio, the special permit granting authority may grant a special permit to authorize the removal and reconstruction of any or all of

the preexisting structure(s), or any portion(s) thereof, with ground cover in excess of the permitted ground cover ratio, provided that:

"(a) Such special permit shall have been issued prior to the removal of the preexisting nonconforming structure(s), or any portion(s) thereof;

"(b) Complete or partial removal and reconstruction of a structure shall not result in an increase in the ground cover of that structure nor of any other structure; and two or more structures that are reconstructed shall remain separate from each other;

"(c) All reconstructed structure(s), or portion(s) thereof, shall conform to all applicable front, rear and side yard setback requirements; unless relief therefrom is granted under separate provisions of this chapter; and

"(d) The special permit granting authority shall have made the finding that the result of the proposed removal and reconstruction shall not be substantially more detrimental to the neighborhood than the existing nonconforming structure and/or use."

According to the plaintiffs' reading of § 139-33.A(9) of the by-law, a structure may not be rebuilt at a different location on a lot in order to conform with applicable setback requirements; instead, it must be reconstructed at its original site, but reduced in size to conform to setback requirements. Therefore, to reconstruct the garage on the lot, the plaintiffs argue that it would have to be reconstructed at its original site and reduced in size by 100 square feet to eliminate a setback intrusion. Nothing in the language of § 139-33.A(9), however, mandates such a restriction. Rather, the requirement that "two or more structures that are reconstructed shall remain separate from each other," appears to presume that reconstructed structures may be relocated to conform to setback requirements subject to that limitation. Otherwise, as the Land Court judge observed, the phrase would be rendered meaningless.

Likewise, the use of the term "reconstruction" rather than "construction" in the language of § 139-33.A(9) of the by-law

does not evidence an underlying site requirement for the rebuilt structure. "Reconstruction" simply means "[t]he act or process of rebuilding, recreating, or reorganizing something." Black's Law Dictionary 1387 (9th ed. 2009). See *Berliner* v. *Feldman*, 363 Mass. 767, 771 (1973). There is nothing implicit in the meaning of the term, or its use in the by-law, that excludes reconstructing a structure at a different site.

The plaintiffs assert that the Land Court judge's decision "undermines . . . § 139-33A(9)'s goal of reducing nonconforming excess groundcover." The language of the by-law explicitly states, however, that "reconstruction of a structure shall not result in an *increase* in the ground cover" (emphasis supplied). It plainly does not require a reduction in ground cover, as the plaintiffs suggest. Rather, the goal of § 139-33.A(9) appears to be greater conformity with setback requirements. In sum, the board's interpretation of the by-law, which is entitled to our deference, is logical and reasonable.

3. *Garage demolition.* The plaintiffs argue that the judge erroneously determined that the garage was demolished after the special permit was issued, and that the timing of the demolition remains a genuine issue of material fact. The demolition date is relevant because relief under § 139-33.A(9) requires that the special permit be issued prior to the removal of the pre-existing nonconforming structure.[9]

We agree with the judge that there is no genuine issue of material fact regarding the garage demolition. It is undisputed that the decision granting the special permit issued on February 17, 2005. To support their argument that the garage was demolished before that date, the plaintiffs cite contractor Thomas A. Nelson's deposition, in which he states that work at the site,

[9]The plaintiffs also argue that the timing of the demolition was not within the scope of their motion for partial summary judgment. A judge, however, may enter full summary judgment sua sponte when presented with a motion for partial summary judgment, so long as the parties have "sufficient notice of his intention to do so, opportunity to submit affidavits, and a right to be heard on the matter." *Gamache* v. *Mayor of N. Adams*, 17 Mass. App. Ct. 291, 295 (1983). Although not raised as an explicit ground for summary judgment in the motion itself, the plaintiffs raised the demolition issue in the memorandum in support of their motion and in their accompanying statement of facts. The plaintiffs therefore had ample notice that the issue would be ripe for summary judgment.

including the garage demolition, occurred "[p]robably starting November or December of [20]04 and probably right through spring, April, May." When asked specifically about the garage demolition, Nelson states that "[i]t was probably somewhere in — I would have to say it was probably December or January, maybe January or so of [20]05." The strength of Nelson's testimony is significantly weakened, however, by his admission that "I am really guessing here." Thus, at most, Nelson's recollection of the demolition date is a guess.

Countering Nelson's testimony is the affidavit of board administrator and voting member Linda Williams, who averred that "[a]s part of my duties as [board] administrator, and in preparation for drafting staff recommendations, I inspected the premises at 42 Monomoy Road in January, 2005. . . . I personally observed that the garage/secondary dwelling was still fully intact at the end of January, 2005." The affidavit of architect Mark Cutone is consistent with Williams's recollection. Given these affidavits, and the equivocal nature of Nelson's deposition testimony, we agree with the Land Court judge that no genuine issue of material fact existed as to the garage demolition date.[10]

*Conclusion.* The judge did not err in allowing summary judgment in favor of the defendants.

*Judgment affirmed.*

---

[10]We add that the plaintiffs' passing mention of Conroy's answer to an interrogatory in which he indicates that the garage was demolished in the fall of 2004 does not change the result. This evidence never appeared in the plaintiffs' memoranda on the issue and was not addressed by the judge in his decision. Given Conroy's unwavering position that the garage was demolished after the special permit was granted, as was initially alleged in the plaintiffs' complaint, the answer could only have been an inadvertent mistake.