**R. F. McMAHAN, Jr., et al., Appellants,**

v.

**L. P. WITTLIG et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 28, 1958.

**778**

Robert L. Sloss, Edgar A. Zingman, Wyatt, Grafton & Grafton, R. Davis Mc-Afee, John L. Knopf, Louisville, for appellants R. F. McMahan, Jr., and others.

James L. Taylor, Louisville, for Louisville & Jefferson County Planning & Zoning Commission.

C. Maxwell Brown, Louisville, for appellees.

CAMMACK, Judge.

This is a zoning case involving a nonconforming use of a building in the community of Middletown, Jefferson County. KRS 100.069. The action was instituted by the appellees, L. P. Wittlig and a few other nearby residents and property owners of Middletown, against the appellants, R. F. McMahan, Jr., and Alice McMahan (individually, and doing business as the Middletown Manufacturing Company), and also the Louisville and Jefferson County Planning & Zoning Commission, to enjoin the use of certain McMahan property (located in a residential section) for manufacturing purposes and to set aside the action of the Commission in issuing a zoning permit for a nonconforming use. This appeal is from a judgment which cancelled and set aside the zoning permit and enjoined the use of the appellants' property except for named uses. The uses are: (1) A garage for storage as defined by the Commission; (2) any use in the zoning classification "D–1" Commercial as promulgated by the Commission in its 1943 zoning regulations; or (3) a use no more burdensome on the neighbors than "D–1" Commercial. The Zoning Commission is not a party on the appeal.

The appellants contend that reversal should be granted because: (1) The language of KRS 100.069 authorizes the change of a nonconforming use to any other use permitted within the zoning classification which included the nonconforming use when the zoning regulations were adopted in 1943; and (2) the appellees are barred by laches from obtaining an injunction against the appellants' nonconforming use.

The nonconforming use statute, KRS 100.-069, follows:

"The use of a building or structure existing at the time of the adoption of any zoning regulation or restriction, or at the time of any adjustment or revision thereof or amendment thereto, although such use does not conform to the provisions of such new regulations or restrictions, may be continued, and a nonconforming use of a building or structure may be changed to another nonconforming use of the same or more restricted classification."

A brief review of the history of the use of the building involved herein is necessary. The building was erected on the outskirts of Middletown in 1927 by a contractor who used it for work incidental to his contracting business and for storage of his equipment and materials until his death in 1932. The equipment and materials remained in the building until 1937 when they were sold. There is evidence indicating that a blacksmith's forge and a lathe were included in this equipment, but some witnesses who frequented the premises during the period said that they never saw such items there. From 1934 until some time after May 10, 1943 (the date zoning regulations became effective in Jefferson County), the building was used for the storage of automobiles. Activity around the building was minimized during the war period because of rationing which permitted only occasional withdrawals of cars from storage for sale.

Around 1942 the McMahans began leasing or subleasing a portion of the building for the storage of metal materials. They purchased the building in 1946 and continued to use it for such storage, though they testified there was some manufacturing equipment in it then which had been in use around 1940. In 1949 they began manufacturing metal parts and equipment in the building. Their manufacturing activities required the installation of three-phase electrical power, heavier machinery and more manpower by early 1955. Their proof shows, however, that they were engaged in the same type of activities in 1949 that they were in 1955. Their gross business in 1955 was $680,000. This action was instituted in March, 1955.

In November, 1953, and before complete conversion of the building to manufacturing had occurred, the McMahans applied for a zoning permit to continue occupying their property for any use permitted by Section 10, "E–1" Light Industrial, of the 1943 Zoning Regulations of the Commission. The permit was issued after an inspection by William C. Beatty, who served as Chief Zoning Enforcement Officer from 1944 to 1955. Beatty testified that he was familiar with the McMahans' operations from 1948, having made many inspections, and that they were using the building for a sheet metal shop which was a permitted use under the 1943 Zoning Regulations, Section 10 "E–1" Light Industrial. Beatty said further that the building had been classified in 1943 as a Section 10, "E–1" Light Industrial Warehouse use. It was Beatty's view that the McMahans did not need the permit in 1953 and that it was issued only because they wanted something in writing before they began further expansion of their operations.

Among the 135 or more itemized uses listed in the "E–1" Light Industrial classification of 1943 are: contractor's shop and storage yard, storage warehouse, and sheet metal shop (no smelting, milling, or rolling). The appellants insist that their present use of the building is as a sheet metal shop which comes within the purview of that classification. It is beyond question that sheet metal work and some manufacturing are being done in the building. But it is the contention of the appellees, and the trial court so found, that since 1943 the building has been converted from a warehouse for automobiles to a manufacturing plant.

The appellants argue that, since the building was erected for use as a contrac-

tor's shop, and was being used in either that capacity or as a storage warehouse (both of which uses were listed in the 1943 classification "E–1" Light Industrial) when the zoning regulations classifying the entire area residential were adopted in 1943, their present use of the building is allowed under KRS 100.069. They rely upon the right given by the statute to change from one nonconforming use to another use "of the same or more restricted classification." They insist that the judgment of the trial court should be reversed because it is based upon the erroneous conclusion of law that only a nonconforming use which is "no more burdensome on the neighbors" than the nonconforming use in existence at the time of adoption of zoning regulations in 1943 is authorized under KRS 100.069. On the other hand, the appellees vigorously contend that the ruling of the trial court is correct. It is their position that the trial court's ruling is consistent with one of the primary objectives in zoning—namely, to hold various classes of buildings and uses to certain areas without working undue hardships upon the owners. They insist that the Legislature did not contemplate, what they call, an arbitrary grouping together of noxious and unobtrusive uses in one zoning classification by the Commission when the zoning statute was enacted; and, also, that the intent of the Legislature was in accord with the ruling of the trial court. Obviously, these sharply conflicting views put in issue the reasonableness of the use classifications and the listing of business enterprises thereunder by the Commission in 1943, to say nothing of the Commission's actions under those classifications. But we pass those questions because we think the appellants' plea of laches is well grounded.

The appellants contend that the appellees are barred by laches because, having knowledge of the facts, they stood by over a period of years and allowed the appellants to expend substantial sums on their property for equipment and remodeling. The trial court ruled that laches did not apply because the conversion of the use of the building to manufacturing was gradual and the appellees had no opportunity to observe the occurrence and effect until it was complete—at which time they promptly instituted this action (March 18, 1955). We think the trial court was in error, both as to the appellees' opportunity "to observe" and as to their "promptness of action."

The trial court found that the proof did not show any sort of "justiciable nuisance" in the manufacturing operations. From the court's opinion we gather that the major source of irritation to the appellees is the increased traffic to the plant. Many vehicles come and go and are parked on the narrow roadway which the building faces. Often private drives are used for convenience in turning. The appellants employ some 20 or 30 persons who account for part of the traffic increase and some part of the remainder arises from the plant's business invitees. It seems highly improbable that the conversion of the building to manufacturing could have occurred without some increase in traffic over a period of several years. However, this factor alone may not have been sufficient to place the appellees on notice that the present operations were about to commence. There were other factors.

We have noted the issuance of the zoning permit, a matter of public record, in 1953, and also the knowledge of and attitude toward the appellants' activities on the part of the Zoning Commission. There is evidence indicating that one of the appellees called the Commission in regard to the permit at or near the date of its issuance. This, together with evidence showing that one of the appellees did some wiring for the appellants during the period of conversion, leads us to conclude that it was lack of diligence rather than lack of opportunity which kept the appellees from learning of the activities of the appellants, if they were so kept. Furthermore, all of the appellants' operations have been carried on in the open. Machinery was unloaded in full view of some of the appellees. Installation of the

three-phase electrical current, which necessitated running a new line to the building, was completed prior to the filing of this action.

█ We have said that laches is something more than delay and delay alone will not sustain this defense. There must be a showing that the party knew his rights and did not attempt to enforce them until the condition of the party who set up the defense has been so changed that he cannot be restored to his former state. Fergerson v. Utilities Elkhorn Coal Co., Ky., —— S.W.2d ——.

In the recent case of Silliman v. Falls City Stone Company, Ky., 305 S.W.2d 322, we dealt with a situation where a restraining order enjoining the Zoning Commission from interfering with the operations of certain rock quarrying plants had been issued. The plaintiffs, who knew of this order and who thought that the nonconforming use carried on at the plants was not authorized by the judgment allowing the use as a rock quarry, stood by and watched additional construction at the quarry at a cost of $400,000. We said the trial court was correct in finding that the plaintiffs were barred by laches when they sought to enjoin the use on the basis that it was not authorized by the judgment.

██ In the case at hand the appellees knew or could have known that the Zoning Commission, with full knowledge of the appellants' operations, had granted a permit allowing use of the building for any of the numerous businesses designated in the Commission's 1943 classification "E–1," Light Industrial. Furthermore, the appellees, residents of a small suburban community, knew or could have known that a building in their neighborhood was gradually being converted to manufacturing use. Under these conditions, failure of the appellees to bring suit until after the appellants had made substantial changes and improvement expenditures constituted the "something more than delay" sufficient to sustain the defense of laches when the changes and improvement expenditures made the cost of moving the operations elsewhere prohibitive. We attach no significance to the fact that some additional expenditures were made by the appellants after the action was filed.

The judgment is reversed, with directions that it be set aside, and for the entry of a judgment consistent with this opinion.