The ATTORNEY GENERAL, etc., et al.,
Appellants,

v.

G. L. S. JOHNSON et al., Appellees.

Court of Appeals of Kentucky.

March 16, 1962.

**306**

John B. Breckinridge, Atty. Gen., Walter C. Herdman, Asst. Atty. Gen., for appellants.

Darrell B. Hancock, John R. Cook, Jr., Lexington, for appellees.

STEWART, Chief Justice.

This is an appeal from an order of the Fayette Circuit Court dismissing appellant's complaint on motion of appellees.

Appellees, G. L. S. Johnson and his wife, Bridget Johnson, and S. C. Guilfoyle, requested the Board of Adjustment of the City-County Planning and Zoning Commission of Lexington and Fayette County (hereinafter referred to as "the board") for a permit to conduct a coin-operated laundry at 200 College View Avenue in a residential district, following a building inspector's refusal to grant a license to carry on the business at this site. Such a permit would amount to a variance from an existing nonconforming use. The University of Kentucky, an adjoining landowner, opposed the allowance of the permit. After a hearing, the board granted it.

The Attorney General of the Commonwealth of Kentucky then entered the controversy on behalf of the university and filed an appeal in the circuit court which, as we have noted, was dismissed. The case is now before us and reversal of the judgment is urged on the ground that the board's action was arbitrary, unreasonable and illegal because:

1. The nonconforming use had previously been discontinued and abandoned; and

2. The evidence fails to show any "undue hardship" or "peculiar and exceptional practical difficulties" required under the zoning ordinance-resolution for permitting any variance from a nonconforming use.

Section 1 of KRS 100.355 provides in brief that the "lawful use" of land for certain purposes in a city such as Lexington, existing at the time of the adoption of any

zoning regulation, or at the time of any amendment thereto, may be continued, although such use does not conform to the terms or conditions of the new regulations or restrictions. Subsection 2 of this section states, in part, that "a nonconforming use of the building or structure may be changed to another nonconforming use of the *same* or *more restricted* classification." (Emphasis added.)

Section 24.422 of the zoning ordinance-resolution of the City of Lexington bestows upon the board the authority to allow a variance where the strict or literal enforcement of its provisions would result "in peculiar and exceptional practical difficulties or exceptional and undue hardship upon the owner" as regards the piece of property affected. Section 5.222 of the zoning ordinance-resolution provides in substance that where a nonconforming use is voluntarily discontinued it is lost and thereafter cannot be resumed nor can a variance be granted.

(The zoning ordinance-resolution was not incorporated in the record but we believe, from the extensive references made to it, we have correctly epitomized the pertinent subject matter of the two sections above mentioned.)

The property in question, located on the corner of College View Avenue and Lexington Avenue, was acquired by the Johnsons in 1946, and a structure situated thereon was used by them as a grocery store until August, 1955. It had for 32 years previously been operated as a grocery store and was so operated when the zoning ordinance-resolution was passed.

In December, 1955, the Johnsons leased the main building to the Newman Club of the University of Kentucky to be used for social and missionary group meetings. The Newman Club remained as a tenant until September 1, 1959. The Johnsons stored some fixtures and home-canned goods in the basement and kept some record books in an outbuilding. S. C. Guilfoyle used a portion of the building for a secondary real estate office on some occasions. A garage on the premises was rented to one Walter J. Jordan.

Appellants argue the foregoing facts, which are undisputed, clearly show a change in the original nonconforming use of the property, for which no variance was obtained, and that its established use as a grocery store had voluntarily been abandoned for almost five years prior to appellees' application for a permit to conduct a coin-operated laundry at the site.

In support of this position appellants cite McQuillin, Municipal Corporations, (3d ed.), Vol. 8, sec. 25.189, wherein it is stated: "It is a general rule that the right to a nonconforming use continues only so long as the use continues to exist in fact and until its legal termination, which may be by nonuse or discontinuance for a prescribed period, * * *. The original nature and purpose of a nonconforming use must remain unchanged, if it is to continue to exist as of right."

■■■ The policy and spirit of the zoning law of this state ordains the gradual elimination of nonconforming uses, and the general intent of ordinances dealing with the subject matter is to hold nonconforming uses within strict limits; and any change effected, as subsection 2 of KRS 100.355 requires, must be "to another nonconforming use of the same or more restricted classification." We have pointed out that an important consideration in a case of this character, where a shift in use is contemplated, is to be certain that the type of activity carried on under the second use is merely *incidental* to the major activity allowed by the former nonconforming use. See Feldman v. Hesch, Ky., 254 S.W.2d 914. See also McQuillin, Municipal Corporations, (3d ed.), Vol. 8, sec. 25.183.

■ A diligent search has brought to light only two cases decided in this forum which touch on the course this Court has followed where an issue involving a material change in a nonconforming use has been

presented to be passed upon. These cases are City of Bowling Green v. Miller, Ky., 335 S.W.2d 893, and Feldman v. Hesch, supra. Each of them laid down the rule that nonconforming uses should be held within a rigid boundary. Under the facts presented, one held the existing use could not be enlarged or extended; the other that a change to a substantially different use was of course not allowable. The same statute, KRS 100.355, and an ordinance similar to the one in this case, were involved. We believe the principles laid down in these two cases are controlling here. This leads us to an inquiry of whether there has been such a discontinuance of the established use of the property under consideration that it must be declared lost.

■ In other words, has there been an abandonment in this case of the existing nonconforming use? We believe there has been. In the case of State v. Casper, 5 N.J.Super. 150, 68 A.2d 545, it was held that a nonconforming use must be actively and constantly maintained or it will be deemed relinquished. The question of abandonment, like the question of an established use, must be approached upon the basis that the law is concerned, not with a mere plan in mind or a change of intention, but with acts or a failure to act. See McQuillin, Municipal Corporations, (3d ed.), sec. 25.192. Certainly, a considerable lapse of time in the discontinuance of the use may show an intention to abandon the right and may be considered in connection with acts manifesting that intention. See McQuillin, id., sec. 25.192.

When we measure the principles of law we have stated against the facts presented, we must hold that the original nature and nonconforming use of the property in controversy as a grocery store was abandoned in December, 1955, when the Johnsons rented the main building to the Newman Club of the University of Kentucky. In addition, other departures from the existing use of the property besides its employment as a grocery store were placed in effect during this time. These we have recited. That an intention to abandon the established nonconforming use has remained in the minds of the Johnsons since 1955 is also made manifest by their undertaking to lease the premises at a fairly recent date as a coin-operated laundry. Thus, the acts of the Johnsons in ceasing to conduct a grocery store at the site, together with the long period of time, namely, five years, that such nonuse has continued, afford a sufficient basis for concluding there has been an abandonment of the nonconforming use within the meaning of the ordinance-resolution.

■ Appellees contend the board was estopped to deny the issuance of a permit because the city building inspector, James L. Shea, advised Guilfoyle that a nonconforming business use of the property could be maintained by the placing of a sign on the building indicating that it was to be used for a real estate office. The building inspector issued a permit to Guilfoyle for business use of the property as such an office in 1957 and 1959, each permit covering a period of two years. A sufficient answer to this argument is contained in this statement from 101 C.J.S. Zoning § 390, p. 1235:

"A municipality cannot be estopped to enforce a zoning regulation against a violator by the conduct of its officials in encouraging or permitting such violator or others to violate the ordinance in the past, since in the enforcement of a zoning ordinance, bylaw, regulation, or restriction a municipality or other governmental subdivision acts in its governmental capacity as distinguished from its proprietary capacity, so that the doctrine of estoppel cannot be applied against it."

In view of the decision we have reached with reference to the first point raised, it becomes unnecessary to consider the second.

Wherefore, the judgment is reversed for consistent proceedings.