**HOLLOWAY READY MIX COMPANY, Appellant,**

v.

**Wallace A. MONFORT and Theodore E. Pferrer, Appellees.**

Court of Appeals of Kentucky.

March 22, 1968.

Rehearing Denied Nov. 19, 1971.

Frank E. Haddad, Jr., Ralph G. Stone, Louisville, for appellant.

E. Skiles Jones, William Seiller, Jones, Ewen, MacKenzie & Peden, Louisville, for appellees.

EDWARD P. HILL, Jr., Judge.

This is an appeal from a judgment permanently enjoining appellant, defendant in the trial court, from continuing construction and operation of a central concrete mixing plant. It further ordered the dismantling and removing of the plant already built.

Appellant, hereinafter called Holloway, is a company engaged in the business of mixing and selling concrete. In 1963, it became interested in purchasing property owned by Joseph W. Chapman for the construction of a concrete plant. It was advised by its secretary and legal counsel, Mr. Stone, that the approval of the Jefferson County Building Department and the Jefferson County Zoning Commission should be obtained before buying the property. Mr. Stone then went to see officials of both the Department and the Commission. The evidence is not clear as to exactly what was said at these meetings, but the end result was that Holloway was advised that it would be permissible to build the concrete plant on the Chapman property. Apparently this advice was based on Mr. Stone's representations to the city officials that there existed on the property a nonconforming use, specifically an operating quarry. It was also apparently decided that a concrete plant was a proper adjunct to such nonconforming use.

On the basis of this advice, Holloway on November 18, 1963, filed its application with the Jefferson County Building Department for a permit to build the plant, some bins, and a garage on the Chapman property. The permit was issued that same day.

Several days later appellant purchased the property.

In February 1964, appellee Monfort, a neighboring landowner, saw bulldozers on the Chapman property. Two or three weeks later he saw a tower being constructed. He called a neighbor, Chapman's brother-in-law, and asked him about the construction. He, Monfort, was told that the construction was legal as a nonconforming use. Shortly thereafter, several neighbors held a meeting concerning the use of the property and complaints were sent to the county judge. Presumably as a result of these complaints a letter was sent to Holloway on April 9, 1964, revoking its building permit and ordering all

work stopped. The letter stated that the permit was issued on the basis of the existence of a quarry on the property and that investigation of the location failed to reveal the existence of a quarry.

On May 13, 1964, the county attorney and the building inspector filed a complaint in which they asked that Holloway be restrained from continuing the construction and operation of the concrete mixing plant; that Holloway be temporarily and permanently enjoined from continuing construction and operation of the concrete plant; and that Holloway be mandatorily enjoined to dismantle and remove from said premises all construction undertaken pursuant to the building permit.

On the same day as the complaint was filed, a temporary restraining order was issued. On June 12, 1964, an intervening complaint was filed by appellees, who alleged that they were taxpayers with property neighboring on the property in question. They asked for the same relief as was asked for in the original complaint on the grounds that the building permit was issued as a result of Holloway's misrepresentation or omission of material facts upon which the Jefferson County Building Department relied or, in the alternative, that said permit was issued by mistake of law. It was further alleged that appellant had built its plant in violation of the zoning regulations of Jefferson County because the Chapman property was zoned "M–2 Industrial District," which does not permit a concrete proportioning plant. Such a plant requires a "M–3 Industrial District" classification.

Subsequent to the hearing on the temporary injunction, the *original* plaintiffs and Holloway entered into an agreed judgment which dissolved the restraining order, permitted appellant to complete construction of the concrete plant under the permit which was issued November 18, 1963, and permanently enjoined appellant from using the property for any use less restrictive, as defined by the Zoning Commission,

than a ready-mix concrete plant, or for any use not permitted by the zoning regulations. Appellant was further enjoined from blasting or from mining any rock, gravel, sand or other similar materials. It was also provided that the agreed judgment was not to prejudice the rights of the intervening plaintiffs.

Findings of fact and conclusions of law were later made on the *intervening* complaint. These were that the nonconforming use of the property as an operating commercial rock quarry was abandoned before Holloway purchased the Chapman property; that the intervening plaintiffs were not barred by laches; and that the permit was issued under a misapprehension of fact for which Mr. Stone was largely responsible. On the basis of these findings, Holloway was permanently enjoined from continuing construction and operation of the concrete plant or any activity incidental thereto and required to dismantle and remove the concrete plant built pursuant to the permit.

Holloway appeals alleging error in the trial court's findings.

■ Holloway first argues that this property enjoys the advantages of a nonconforming use conferred by KRS 100.068, which provides:

"The lawful use of land for trade, industry or residence, existing at the time of adoption of any zoning regulation or restriction, or at the time of the adjustment or revision thereof, or amendment thereto, although such use does not conform to the provisions of such new regulations or restrictions, may be continued."

The zoning regulations for Jefferson County were adopted May 10, 1943. The evidence is uncontradicted that a quarry was operated on the property until 1938 or 1939. It is also clear that the owners tried to lease the property for use as a quarry until 1946 or 1947. Under the rule set out in Smith v. Howard, Ky., 407 S.W.2d 139 (1966), an attempt to lease is sufficient to show that the requisite intent to abandon the nonconforming use is lacking. Therefore, there is no question here that the nonconforming use continued until 1947, several years after the zoning regulations were adopted.

Since 1947, the only quarrying occurred between 1951 and 1953, when Chapman took some stone to build his house. The only other use made of the quarry from 1947 to the present was for fishing and swimming. This evidence, when considered in the light most favorable to Holloway (that is assuming that the nonconforming use continued until 1953), shows that the property was not used as a quarry after 1953. This period (from 1953 to 1963 when Holloway applied for its building permit) of over ten years is certainly indicative of an intention to abandon the use as a quarry. Attorney General v. Johnson, Ky., 355 S.W.2d 305 (1962). As further evidence of an intention to abandon, Billy Holloway, part owner of Holloway Company, testified that he told the neighboring landowners that the company had no intention of operating the quarry.

It is concluded that this 10-year period of nonuse as a quarry was sufficient to show an intention to abandon that use.

Holloway contends that the concrete plant is not a change in nonconforming use because it is incidental to the use as a quarry. Furthermore, it is a higher use than before, and the law favors the higher use of nonconforming land. These contentions need not be discussed, however, if it is concluded that the nonconforming use has been abandoned. If the nonconforming use no longer exists, of course, there can be nothing incidental to it, nor can a higher nonconforming use be made of it. This conclusion is consistent with the spirit and intent of zoning to eventually

eliminate nonconforming uses. See Rathkopf, The Law of Zoning and Planning, Chapter 62.

Appellant next argues that the trial court was in error in deciding that the Building Department issued a permit based upon a mistake of fact induced by appellant. The record, however, shows that there was ample evidence to support such a finding.

Mr. Beatty of the Jefferson County Planning and Zoning Commission testified that if he had known that there was no operating quarry on the property, he would not have believed a nonconforming use existed and appellant would not have been entitled to a permit.

Mr. Taylor, attorney for the Jefferson County Planning and Zoning Commission, testified that had he known that the quarry was filled with water and not in operation his opinion of the legality of the cement plant might have been different.

It appears, therefore, that had Mr. Stone put all of the facts before the Planning and Zoning Commission the permit might not have been issued. The trial court relied on Selligman v. Western & Southern Life Ins. Co., 277 Ky. 551, 126 S.W.2d 419 (1938), where the building inspector had issued a permit under a misapprehension of fact. The court did not say that the permit was secured by fraud but that the circumstances required him to make a more complete disclosure of facts and that the permit was issued under a misapprehension of fact for which the applicant was largely responsible. We cannot say that the conclusion of the chancellor that the permit here was issued under a misapprehension of fact was clearly erroneous. Therefore, the findings must stand. CR 52.01.

Furthermore and disregarding the question of whether the permit was issued upon a mistake or failure to disclose, it was held in Ashland Lumber Company v. Williams, Ky., 411 S.W.2d 909, 910 (1966), that:

"If the inspector issues a permit for a use that violates the zoning regulations the permit is no protection and its issuance does not estop the city from enforcing the regulations. Attorney General v. Johnson, Ky., 355 S.W.2d 305."

Appellant's final argument is that appellees are barred by the doctrine of laches and estoppel. This argument is based on the fact that the building permit was issued on November 18, 1963, and was a matter of public record and was notice to everyone and that the complaint was not made until April 9, 1964, after construction was 98 percent complete.

The defense of laches requires a showing that the party knew his rights and did not attempt to enforce them until the condition of the party who set up the defense has been so changed that he cannot be restored to his former state. It is more than mere delay. Fergerson v. Utilities Elkhorn Coal Co., Ky., 313 S.W.2d 395 (1958); McMahan v. Wittlig, Ky., 310 S.W.2d 777 (1958).

In the case at bar, Holloway obtained its building permit on November 18, 1963. Construction was started in the latter part of February. Shortly thereafter, appellee Monfort noticed that a bulldozer had been operating on Holloway's property but that from the appearance of the land one could not tell what was being constructed. It was not until the latter part of March that Monfort saw the structure rising. After checking a zoning map, he came to believe that the property was not zoned for a concrete plant. A neighborhood

meeting was called on April 5, 1964, at which time it was decided that a lawyer be employed to look into the matter. Several days later a complaint was made to the Jefferson County Building Department; and on April 9, a letter revoking the building permit was sent to Holloway.

The complaint was made less than five months after the permit was issued, about six weeks after construction started, and two to three weeks after Monfort noticed the structure rising.

These facts do not indicate that appellees stood by and watched Holloway substantially finish construction before they acted. This court has recognized that a "concerted effort by a group of property owners naturally is slow in getting organized." Ashland Lumber Company v. Williams, supra. When this is considered with the fact that construction was completed quite rapidly, it is difficult to understand how appellees could have made their complaint earlier.

The fact that the building permit was a matter of public record is not in itself sufficient to raise laches. In *McMahan,* supra, this court mentioned the use of a building permit for public notice. But the court pointed out that the permit had been a public record for several years and used it along with other very strong evidence to show that the neighboring property owners were barred by laches. That is not the case here.

In conclusion, we find that the nonconforming use had been abandoned; that the building permit was issued on the basis of a mistake of fact for which appellant is at least partly responsible; and that appellees were not barred by laches.

The judgment is affirmed.

All concur.