NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-328                                          Appeals Court

JOSEPH H. CHIARALUCE, trustee,[1] vs. ZONING BOARD OF APPEALS OF
WAREHAM (and a consolidated case[2]).


No. 15-P-328.

Suffolk.     January 7, 2016. - April 8, 2016.

Present:  Hanlon, Sullivan, & Maldonado, JJ.


Zoning, Nonconforming use or structure, By-law.



Civil actions commenced in the Land Court Department on
July 21 and July 25, 2011.

The cases were heard by Gordon H. Piper, J.


Richard M. Serkey for Joseph H. Chiaraluce.
Mark J. Lanza for Denise R. DePedro.


SULLIVAN, J.  Joseph H. Chiaraluce, trustee of the

Chiaraluce Realty Trust (trust), appeals from a judgment of the

Land Court in a consolidated action, which determined that the

_____

[1] Of the Chiaraluce Realty Trust.

[2] Denise R. DePedro, as trustee of the 18 Wankinco Avenue
Realty Trust, & others vs. Zoning Board of Appeals of Wareham &
another.

trust was not entitled to a building permit for its Wareham lot (locus). A judge of the Land Court concluded that the right to rebuild the nonconforming residential structure that once occupied the lot had been abandoned as a matter of law. We affirm.

Background. We accept the facts as found by the trial judge, unless they are clearly erroneous, Colony of Wellfleet, Inc. v. Harris, 71 Mass. App. Ct. 522, 523 (2008), and "do not review questions of fact if any reasonable view of the evidence and the rational inferences to be drawn therefrom support the judge's findings." Martin v. Simmons Properties, LLC, 467 Mass. 1, 8 (2014). The locus, the subject of numerous efforts to build, is comprised of 7,012 square feet in a residential district that has a current minimum lot size requirement of 30,000 square feet. It has no street frontage and is accessible from the street over a twelve-foot-wide right of way. Olaf, Lorraine, and Laurence Olsen (the Olsens) purchased the locus in 1971 for $16,000, at which time it was improved with a residential cottage ten feet in height, twenty feet in length, and thirty feet in width, with a gross living area of 600 square feet. In August of 1991, Hurricane Bob damaged the cottage, forcing it off its cement block foundation and separating the porch from the cottage. Thereafter, in September, 1991, the Olsens dismantled and removed the cottage from the locus.

Wareham's zoning board of appeals (ZBA or board) granted a "blanket" special permit for reconstruction of residences damaged by Hurricane Bob. Although the Olsens obtained such a permit in March of 1992 and in February of 1993 obtained a six-month extension of the permit, they did not rebuild. Rather, on July 30, 1993, they sold the locus to the trust for $5,000. The Olsens used the $70,000 in insurance proceeds they received for the damage to the cottage to purchase a mobile home elsewhere in Wareham. Given what the judge found to be a low sale price and the Olsens' choice to spend their insurance proceeds elsewhere, the judge found that they intended to abandon the nonconforming structure on the locus.

At the time the trust purchased the locus, Chiaraluce and his wife owned the abutting lot, improved with a single family cottage. Although Chiaraluce testified that his initial plan for the locus was to use it for overflow parking for his abutting property, "but eventually who knew, you know, garage, house," the judge found that Chiaraluce intended to use the locus solely for additional parking for the abutting lot, and not to build a house. As a reviewing court, we accept this factual finding of the judge, who saw and heard the witnesses. See Martin v. Simmons Properties, LLC, 467 Mass. at 8.

In addition to Chiaraluce's testimony, additional facts in the record supported the judge's findings. Chiaraluce sold the

abutting improved lot on August 14, 1998.  It was not until March, 2001, after Chiaraluce had sold his abutting property, that the trust first sought to rebuild on the locus, thus supporting the judge's finding that the property was purchased and retained for parking.  Even after the sale of the Chiaraluce cottage, the trust delayed almost another three years before seeking permission to build.

The trust first sought a building permit in March of 2001, nine and one-half years after the structure on the locus had been damaged and removed.  The building inspector denied the permit, advising the trust that a special permit and/or variance was needed.  The trust's subsequent application for a special permit was denied by the ZBA in June, 2001, and the trust did not appeal.  Rather, some two years later, the trust applied for and received a special permit from the ZBA to construct a new residential structure.  Abutters Mary T. Nielsen and John W. Downey filed separate appeals in the Superior Court.  The cases were consolidated, and a judge of the Superior Court affirmed the special permit on the basis of the grandfathering provision in G. L. c. 40A, § 6, fourth par.  On appeal to this court, we reversed, concluding that the locus did not qualify for grandfathering under § 6 because it lacked the requisite fifty feet of frontage.  Nielsen v. Board of Appeals of Wareham, 69 Mass. App. Ct. 1106 (2007) (memorandum and order pursuant to

rule 1:28).[3] Because the issue was not properly before us as to whether the locus was buildable on the basis of more generous provisions of the Wareham zoning by-law, we left that issue open.

In May, 2010, the trust obtained a building permit for a much larger structure, with a gross floor area of 2,464 square feet. Upon the request of abutter Denise R. DePedro that the building inspector enforce the by-law, the permit was revoked. The trust later withdrew its appeal from the revocation, and on December 15, 2010, the trust filed an application for a building permit pursuant to §§ 1322 and 1335(1) of the by-law[4] to construct a residence with roughly the same footprint as the Olsens' original residence, but about fifteen feet taller. The building inspector denied the application, and the trust appealed his decision to the ZBA. On July 14, 2011, the ZBA, while upholding the denial of the application for a building permit as of right, granted the trust a special permit pursuant to § 1322 of the by-law. The trust appealed from so much of the board's decision as determined it was not entitled to a building

---

[3] We also rejected an argument that the locus had merged with the abutting lot owned by the Chiaraluces as tenants by the entirety, reasoning that the locus was held by Chiaraluce as the sole trustee and he did not have the power to use the adjoining land to avoid or reduce a nonconformity.

[4] Pertinent sections of the by-law are reproduced in an Appendix to this opinion.

permit as of right.  DePedro (as trustee, see note 2, supra),
Mary T. Nielsen, John W. Downy, and Maria P. Downy
(collectively, the abutters)[5] appealed the award of the special
permit, and a judge of the Land Court consolidated the two
appeals.

On cross motions for summary judgment, the Land Court judge
determined that the abutters had standing to bring their appeal,
and that the locus met the requirements for a special permit
under § 1322 of the by-law.  The judge found, however, that
while there was no time restriction mandated by G. L. c. 40A,
§ 6, third par., or § 1341 of the by-law related to abandonment
of the right to rebuild on a nonconforming lot, there were
questions of fact whether the structure had been abandoned as a
matter of law "apart from ordinance."  Dial Away Co. v. Zoning
Bd. of Appeals of Auburn, 41 Mass. App. Ct. 165, 171 (1996).  In
declining to grant summary judgment to the abutters on this
basis, the judge noted, among other factors, that "[t]here has
been prior litigation, which consumed a number of years, and
which at its conclusion left open, in the view of the Appeals
Court panel which considered that prior case, alternative
avenues to obtaining approval for a building on this land."

---

[5] DePedro's property directly abuts the locus; the Nielsen
and Downy properties are abutters of abutters.

After the trust requested a remand, the ZBA granted a special permit pursuant to G. L. c. 40A, § 6, first par., and § 1335(2) of the by-law, and made a finding that, although the proposed reconstruction would increase the nonconforming nature of the structure, that increase would "not be substantially more detrimental to the neighborhood than the pre-existing structure." The parties amended their pleadings accordingly; the ensuing trial on the board's decisions pursuant to both § 1322 and § 1335(2) of the by-law was limited to two unresolved issues: (1) whether the nonconforming structure had been abandoned as a matter of law, and (2) whether the board exceeded its authority by issuing the permits under the by-law. Following trial, the judge found that the trust and the Olsens had abandoned the single family residential structure and determined that no building permit may issue. The trust appeals.

Discussion. As the judge noted, municipalities are authorized, but not required to "define and regulate nonconforming uses and structures abandoned or not used for a period of two years or more." G. L. c. 40A, § 6, third par., as appearing in St. 1975, c. 808, § 3. In § 1341 of the by-law, Wareham opted to regulate only "uses" abandoned or not used for a period of two years or more. Although the by-law does not provide a time limit by which time a nonconforming structure

must be reconstructed in order to avoid being considered abandoned, in Dial Away Co., 41 Mass. App. Ct. at 165, 172, we concluded that an undersized lot did not retain its protected character as a buildable lot twenty-three years after a nonconforming dwelling on the lot was razed; the right to reconstruct the nonconforming dwelling had been abandoned as a matter of law.  We noted that the lapse of time following a demolition may be so significant that abandonment properly is inferred as a matter of law.

Generally, "[a]bandonment requires 'the concurrence of two factors, (1) the intent to abandon and (2) voluntary conduct, whether affirmative or negative, which carries the implication of abandonment.'"  Orange v. Shay, 68 Mass. App. Ct. 358, 363 (2007), quoting from Dial Away Co., 41 Mass. App. Ct. at 172. However, "[w]here the lapse of time following the [razing of a nonconforming structure] is so significant that abandonment exists as matter of law . . . , the 'evidence of things done or not done . . . carries the implication of abandonment . . . [and] [s]upports a finding of intent, whatever the avowed state of mind of the owner.'"  Dial Away Co., 41 Mass. App. Ct. at 172, quoting from Dobbs v. Board of Appeals of Northampton, 339 Mass. 684, 686-687 (1959).  Accord Orange, 68 Mass. App. Ct. at 364.  "Abandonment is primarily a question of fact, . . . although where there is no dispute as to the facts, and all the

evidence is before the court, a question of law is presented."
Paul v. Selectmen of Scituate, 301 Mass. 365, 370 (1938).  Here,
the facts are largely undisputed, and to the extent that intent
was disputed, the judge made factual findings that were fully
supported by the evidence.  We discern no error of law.

The person seeking a permit has the "burdens of proof and
persuasion on the questions of intent and inability as they
relate[] to a possible abandonment."  Bartlett v. Board of
Appeals of Lakeville, 23 Mass. App. Ct. 664, 671 (1987).  In
concluding on summary judgment that material questions of fact
remained, the Land Court judge correctly noted that it would not
be a simple matter to show that the nonconforming structure had
not been abandoned.  The judge advised that the trust "will need
to demonstrate why there were, in the chronology of this site
since Hurricane Bob in 1991, various missed opportunities to
build, including unexercised permits, and gaps where pursuit of
the right to build seems not to have been pressed with much
force, if at all."

Curiously, however, the trial shed no light on the reasons
why Chiaraluce allowed the Olsens' special permit to lapse and
made no other effort to obtain a building permit for some seven
and one-half years after acquiring title, and over nine and
one-half years after the nonconforming structure had been razed.
The judge found that the Olsens had no intent to rebuild and

credited only so much of Chiaraluce's testimony that he intended to use the locus as a parking lot. Given these factual findings, the judge did not err as a matter of law in concluding that the structure had been abandoned. Although the time period is not as extreme as the twenty-three years present in <u>Dial-Away</u>, given the availability of a blanket special permit here, its unexplained lapse, the failure to attempt to build for over nine and one-half years following the razing of the nonconforming structure, and the judge's finding that Chiaraluce intended to use the locus as a parking lot, the structure and the right to reconstruct it have been abandoned as a matter of law.[6]

<u>Judgment affirmed</u>.

---

[6] Chiaraluce's argument that the abutters should be barred by principles of res judicata from raising the abandonment issue was not made to the trial judge and is therefore waived. See <u>Scheffler</u> v. <u>Board of Appeal on Motor Vehicle Liab. Policies & Bonds</u>, 84 Mass. App. Ct. 904, 905 (2013), quoting from <u>Palmer</u> v. <u>Murphy</u>, 42 Mass. App. Ct. 334, 338 (1997) ("Objections, issues, or claims -- however meritorious -- that have not been raised at the trial level are deemed generally to have been waived on appeal").

<u>Appendix</u>.

Pertinent sections of the Wareham zoning by-law are set forth below.

"1322      <u>Restoration of Damaged or Destroyed Structures</u>

A nonconforming building or structure which has been damaged or destroyed may be repaired or rebuilt provided that such restoration shall not exceed the original area and height and shall be placed no nearer the street line than the building or structure which the restoration replaces and that there is no material change in exterior appearance except according to the terms of a Special Permit issued by the Board of Appeals.

". . .

"1334      <u>Alteration, Reconstruction, Extension or Structural Changes to Pre-existing Nonconforming Single and Two-Family Residential Structures</u>.

"1335      <u>Procedures</u>

As provided for in M.G.L. c. 40A sec. 6, a nonconforming single or two-family dwelling or structure accessory thereto may be altered, reconstructed, extended or otherwise structurally changed provided that:  (1) the proposed alteration, extension or structural change itself conforms to the requirements of the present By-Law and does not intensify any existing non-conformities or result in any additional non-conformities in which event the Building Inspector may issue a building permit and an application to the Board of Appeals need not be made; or (2) as provided below the Board of Appeals finds that (i) there is no substantial increase in the nonconforming nature of said structure; and (ii) such reconstruction, alteration or extension will not be substantially more detrimental to the neighborhood than the existing nonconforming structure or use.

". . .

"1341      <u>Period of Abandonment or Discontinuation</u>

All . . . nonconforming uses [other than agricultural, horticultural and floricultural uses], which have been abandoned or discontinued for more than two years, shall not be re-established. . . . [A]ny future use shall be in conformity with the provisions of this By-Law."